1821.

BAY
v.
CODDINGTON.

BAY *against* CODDINGTON and others.

*B*

A person receiving negotiable paper, in the usual course of trade, for a fair and valuable consideration, from an agent or factor, who has no authority or right to transfer them, but without any knowledge of that fact, or notice of the fraud, may hold them against the true owner. But where *R.* having, as agent of *B.*, received negotiable notes, to be remitted to *R.*, delivered them to *C.*, as security against responsibilities as endorser of certain accommodation notes of *R.*, who had then stopped payment and become insolvent, but on which notes of *R.*, *C.* had not then become chargeable, it was *held*, that though *C.* had no knowledge that the notes so deposited with him belonged to *B.*, but believed *R.* to be the true owner of them, yet that he was not entitled to hold them, as against *B.*, the lawful owner, but was accountable to him for the amount, with interest.

*November* 17, 1820, and *January* 8, 1821.

THE plaintiff being owner of a vessel, employed *Randolph & Savage*, defendants, who were carpenters, to sell her on a credit, and take good notes in payment, and transmit the same to him, with an account of their charges, which he would pay. *R.* and *S.* sold the vessel for 3,875 dollars, and on the 3d of *June*, 1819, received the notes of the purchasers, payable in two, three, and four months; some of them being made payable to, and endorsed by *P. Aymar & Co.*, and the others by *J. R. Stewart.* On the 12th of *June*, 1819, *R.* and *S.* delivered the notes so endorsed to the defendants, *J. & C. Coddington*, who, were, at that time, as they stated in their answer, under heavy re-

sponsibilities for *R.* and *S.,* as endorsers of notes for their accommodation, payable at different times, but all subsequent to the 12th of *June,* 1819, and which they were afterwards obliged to take up, as they fell due, amounting to above 17,000 dollars. The answers admitted that *R.* and *S.* had stopped payment, when the notes so held by them were to be delivered to *J. & C. Coddington.*

The defendants, *J. & C. Coddington,* denied all knowledge of the manner in which the notes had come to the hands of *R.* and *S.,* and alleged that they believed that they were the *bona fide* and exclusive property of *R.* and *S.* ; that they received these notes with others, as a guaranty and indemnity, as far as they would avail, for their responsibilities; and three days after, disposed of some of the notes for cash, and did not know, until several days afterwards, that the notes belonged to the plaintiffs, as stated in the bill. They admitted that when they so received the notes, *R.* and *S.* were not, in a strict, legal sense, indebted to them; but that they were under large gratuitous responsibilities for them.

*November* 17, 1820. No proofs were taken, and the cause came on to be heard on the pleadings only.

*S. Jones,* for the plaintiff, contended, 1. That the notes were not negotiated by *R.* and *S.* to *J. & C. Coddington,* in the usual course of trade, nor by the authority of the plaintiff, nor for any consideration given, nor for any responsibility incurred on the credit of the notes; and the defendants, *C.* and *C.,* could not, therefore, rightfully hold against the plaintiff, the true owner of them. (*Willes' Rep.* 400. 1 *Salk.* 160. 3 *Maule & Selw.* 562. *Cowper,* 165.)

2. That *R.* and *S.* having no property in the notes, nor any authority to use them, delivered them, after their insolvency was known, to *C.* and *C.* as security for responsibilities, for which they had not then become charged; and the notes could not, therefore, be held against the owner of them.

3. That the notes were held by *C.* and *C.* merely as trustees for *R.* and *S.*

4. That as *C.* and *C.*, under the circumstances of the case, could acquire no interest in the notes, as against the true owner, they ought to account for them to him, with interest.

*Wells,* contra, put the case not in the ground of a factor pledging the goods of his principal, but on the ground that the notes being *negotiable paper,* might be pledged by a *bona fide* holder, to secure an antecedent debt. The property and possession of *negotiable* bills or notes were inseparable. They might be transferred even by a person who had found or stolen them. Pledging the notes for an antecedent debt, or existing responsibility, was a valid consideration for the transfer, if a consideration was required. (3 *Burr.* 1516. 1 *Burr.* 452. 1 *Boss. & Pull.* 648. 5 *Boss. & Pull.* 170. 1 *Boss. & Pull.* 539. 13 *Mass. Rep.* 105. 15 *Mass. Rep.* 389.) If the defendants, *C.* and *C.*, had not relied on these notes, taken without any knowledge or suspicion that *R.* and *S.* were not the true and *bona fide* owners of them, they might have had other security.

*January* 8, 1821. The cause stood over for consideration until this day.

THE CHANCELLOR. It is admitted that *Randolph and Savage* held the notes belonging to the plaintiff, and which they transferred to the defendants *J.* and *C. Coddington,* on the 12th of *June,* 1819, as agents or trustees for the plaintiff, and that they had no authority to pass them away. It was a gross and fraudulent abuse of trust, on the part of *R.* and *S.* The only question now is whether *J.* and *C. C.* are entitled, under the circumstances disclosed, to hold the notes, and retain the amount of them as against the plaintiff.

Negotiable paper can be assigned or transferred by an agent or factor, or by any other person, fraudulently, so as

to bind the true owner as against the holder, provided it be taken in the usual course of trade, and for a fair and valuable consideration, without notice of the fraud. But the defendants *J.* and *C. C.*, have not entitled themselves to the protection of holders of that description. The notes were not negotiated to them in the usual course of business or trade, nor in payment of any antecedent and existing debt, nor for cash, or property advanced, debt created or responsibility incurred, on the strength and credit of the notes. They were received from *R.* and *S.*, and after they had stopped payment and had become insolvent within the knowledge of *J.* and *C. C.*, and were seized upon by the *Coddingtons*, as *tabula in naufragio*, to secure themselves, against contingent engagements previously made for *R.* and *S.* and on which they had not then become chargeable. There is no case that entitles such a holder to the paper, in opposition to the title of the true owner. They were not holders for a valuable consideration within the meaning or within the policy of the law.

In *Miller* v. *Race*, (1 *Burr.* 452.) a bank note was stolen and came to the hands of the plaintiff, and he was held entitled to it. But the Court of *K. B.* considered bank notes as cash, which passed as money in the way of business; and the holder, in that case, came by the note, for a full and valuable consideration, by giving money in exchange for it, in the usual course of his business, and without notice of the robbery, and on those considerations he was entitled to the amount of the note. So, in *Grant* v. *Vaughan*, (3 *Burr.* 1516. 1 *Black. Rep.* 785.) a bill of exchange payable to bearer, was lost, and the finder paid it to a grocer, for teas, and took the change. There the Court laid stress on the facts, that the holder came by the bill *bona fide*, and in the course of trade, and for a full and fair consideration, and that though he, and the real owner were equally innocent, yet he was to be preferred, for the sake of commerce and confidence in negotiable paper.

1821.

BAY
v.
CODDINGTON.

Again, in *Peacock* v. *Rhodes*, (1 *Doug.* 633.) a bill of exchange, with a blank endorsement, was stolen and negotiated to a person who took it in the way of his trade, for cloth sold and cash for the balance, and he was held entitled to hold it. Lord *Mansfield* placed reliance on the circumstance that it was received in the course of trade. It was " by reason of the course of trade, which creates a property in the assignee or bearer," that *Holt*, Ch. J. (1 *Salk.* 126. *anon.*) held, that the owner of a bank bill which was lost and transferred by the finder to *C.*, for a valuable consideration, could not maintain an action against *C.* It will not be necessary to go further in support of the principle which uniformly pervades the cases upon this point, and I shall conclude with the case of *Collins* v. *Martin*, (1 *Bos.* and *Pull.* 648.) in which it was decided, that if bills of exchange, endorsed in blank, be deposited with a banker, to be received when due, and the banker raises money on them, by pledging them to *C.*, and then becomes bankrupt, *C.* could not be sued by the real owner, as he took them innocently, without knowledge of the previous circumstances. But it is to be observed that *C.* there advanced money to the banker, on the credit of the bills, and, as Ch. J. *Eyre*, observed in that case, " If it can be proved that the holder gave no value for the bill, then, indeed, he is in privity with the first holder, and affected by all that will affect him."

In short, I have not been able to discover a case in which the holder of negotiable paper, fraudulently transferred to him, was deemed to have as good a title, in law or equity, as the true owner, unless he received it not only without notice, but in the course of business, and for a fair and valuable consideration given or allowed on his part, on the strength of that identical paper. It is the credit given to the paper, and the consideration *bona fide* paid on receiving it, that entitles the holder, on grounds of commercial policy, to such extraordinary protection, even in cases of

the most palpable fraud. It is an exception to the general rule of law, and ought not to be carried beyond the necessity that created it.

I shall accordingly declare, that the defendants, *J.* and *C. Coddington*, are not entitled to the notes or the proceeds thereof, as against the plaintiff, who was the lawful owner of them when they were transferred to those defendants, inasmuch as they did not receive the notes in the course of business, nor in payment, in whole or in part, of any then existing debt, nor for cash or property advanced, or debt created, or responsibility incurred on the credit of the notes. And I shall direct that it be referred to a master to compute the amount of the said notes, with interest thereon from the times they were respectively payable, to the time of making the report; and that all the defendants in the amended bill, or some or one of them, pay to the plaintiff the sum that shall be reported as the amount of the said notes, with interest, as aforesaid, within thirty days after the master shall have made and filed his report, and notice thereof, and of this decree, or that the plaintiff may have execution therefor, against all or either of the said defendants, according to the course and practice of the Court.

And it is further ordered, that the defendants *R.* and *S.* pay to the plaintiff his entire costs of this suit, to be taxed, including the costs of the original bill, and that the plaintiff give credit upon the costs so to be taxed, the charges and commissions due from him to the said defendants *R.* and *S.* upon the sale of the vessel in the pleadings mentioned, and amounting to 96 dollars and 87 cents; and that he have execution for the balance of costs, after such deduction, against them, the said *R.* and *S.* according to the course and practice of the Court. And it is further ordered that no costs be taxed or allowed to the plaintiff, or to the defendants *J.* and *C. C.*, as against each other.

Decree accordingly.