## ONTARIO BANK vs. WORTHINGTON.

By the *revised statutes* an acceptance of a bill of exchange is void, unless it be *in writing;* but even before this statutory provision, although a *parol acceptance* of a bill *already drawn* was good, a *parol agreement to accept* a bill *to be drawn in futuro* could not be enforced by an *endorsee,* between whom and the *drawee* no communication had passed, and who had not taken the bill upon the faith of such promise.

So, although after the bill has been passed, the *drawee* gives a *conditional acceptance* in writing to the *drawer,* which is shown to the holder, such holder cannot maintain an action upon the acceptance, *not having taken the bill upon the faith of the acceptance.*

Neither can the holder of a bill of exchange maintain an action upon it against the *acceptor,* where he has taken it for a *pre-existing debt,* if there exist equities in the case which would prevent a recovery in an action by the *drawer* against the *acceptor.*

A valid *agreement to accept* may be declared on as an *acceptance.*

No consideration need not be shown to support an *acceptance,* or an *agreement to accept* a bill of exchange.

A party to a bill of exchange discounted by a bank, who has paid in the amount of the bill as a *deposit,* and indemnified the bank against the costs of a suit on the bill prosecuted in its name against the *acceptor,* is not a *competent witness,* although he has released to the bank all interest in the subject matter of the suit, and the bank has released him from his engagement to indemnify; being liable for the costs to the defendant, those releases do not purge his interest.

If such party by admitted as a witness, and his testimony be *material* for the plaintiffs, and a verdict be found in their favor, such verdict will be set aside.

THIS was an action of *assumpsit,* tried at the Oneida circuit in October, 1830, before the Hon. NATHAN WILLIAMS, then one of the circuit judges.

VOL. XII.                    75

ALBANY,
Oct. 1834.

Ontario Bank
v.
Worthington.

The plaintiffs declared on a bill of exchange, bearing date 28*th October*, 1829, drawn by *Horace Putnam* on the defendant, for $620, payable to the order of Charles Stokes, 60 *days after date ;* which bill was transferred by the payee to *Jay Hathaway*, and by him to the plaintiffs. The bill was alleged to have been *accepted on the day of its date.* On the trial of the cause, it was proved by Putnam, the drawer of the bill, that on the 27th *September* preceding its date, *John Treadway*, who conducted the business of the defendant as a merchant in the city of New-York, the defendant residing at Brooklyn,) and who was authorized and empowered to accept bills of exchange for the defendant, agreed to accept a draft for about $600, to be drawn by Putnam on the defendant, for the amount of which Putnam was to provide funds, by purchasing beef and delivering the same on the canal at Rome, in the county of Oneida, to a forwarding merchant residing at that place. On the 28th of *October*, 1829, Putnam drew the draft payable to Charles Stokes, who endorsed it ; and it was then delivered to Jay Hathaway, to enable him to obtain funds to pay a note given to him by Putnam, endorsed by Stokes, which had been discounted at the Ontario Bank, after being endorsed by Hathaway, and which had been protested and was then in suit. Hathaway endorsed the draft, and it was discounted by the Ontario Bank to meet the protested note. Previous to the *tenth* of *November*, the draft was presented to Treadway for *acceptance*, by a clerk of a bank in New-York, whom Treadway told that he could not accept it then ; but wished it retained a few days, and that as soon as the property arrived he would come to the bank and accept it. On the *tenth* of *November*, Treadway wrote a letter to Putnam, in which he stated that he would arrange the draft in *Stoke's* favor as soon as he received the property, or a receipt of the forwarding merchant for the same. A copy of this letter was delivered to the Ontario Bank, but not until after the draft had been presented for discount. About the last of November, Treadway told Putnam that the draft had not been accepted because the beef had not arrived, but that as soon as enough arrived to meet the draft, he would provide means and pay it. It was admitted by the defendant, that previous to the first of *December*, he

received from Putnam beef to an amount sufficient to meet the draft; but he proved by *Treadway*, that at the time of the conversation between him and Putnam in *September*, Putnam was greatly indebted to him, and that the agreement between them was, that the beef which was to be sent on, should be sent to meet the draft, besides providing by other remittances for the payment of former advances made by the defendant to Putnam: and Treadway further proved, that but a small part of the old debt had been paid, by all the remittances, (including the beef,) and that the defendant would suffer a heavy loss by Putnam. In this statement of the agreement he was contradicted by *Putnam*; and *Hathaway* the creditor of Putnam, who was admitted as a witness, although objected to by the defendant, testified that Treadway confessed to him, previous to 10th *November*, that there was no claim upon the beef to be sent by Putnam other than the draft in favor of Stokes. Hathaway was objected to as a witness, as being *interested* in the event of the suit. The defendant proved, by the president of the Ontario Bank, that *Hathaway* had deposited in the bank the amount of the draft, and had indemnified the bank against the costs of this suit; and this witness further testified, that the bank had no interest in the suit. The plaintiff also read in evidence a *covenant*, executed by Hathaway on the 30th January, 1830, whereby he agreed to obtain for *Stokes* a discharge from his liability as endorser of the protested *note*, and to pay the sureties of *Stokes* the one half of the draft in question. To show that he was not interested, it was proved by the plaintiffs, that *they* had released Hathaway from his agreement to indemnify them against the costs of this suit, and that *he* had released to them all claim to the money to be received on the draft. Upon this testimony the judge decided that Hathaway was a competent witness, and he was accordingly sworn. The plaintiffs proved that in January, 1830, the draft was presented for *payment*, and payment refused.

The evidence being closed, the counsel for the defendant, on the following grounds, insisted, that the plaintiffs were not entitled to recover: 1. That the draft was not negotiable on the faith of the promise to accept; 2. That the promise to accept not being in writing, was not available; 3. That there

was a variance between the declaration and proof: the plaintiffs having counted on an *accepted* bill and the proof not supporting such count; 4. That the original promise to accept was *contingent*, and that there was no subsequent promise varying the obligation; 5. That the promise to accept was made upon a condition which was not complied with, viz; that remittances should be sent to discharge former liabilities; and 6. That the promise was void for want of consideration. The judge overruled all the objections except the *fifth*, which he submitted to the jury; whom he charged, that if they should find that Treadway had agreed to accept the draft whenever beef enough should be delivered upon the bank of the canal to pay it, without reference to remittances for previous responsibilities, then the plaintiffs, having received notice of the agreement to accept, by being furnished with a copy of Treadway's letter of *tenth* of *November*, were entitled to their verdict for the amount of the draft with interest, subject to the opinion of this court upon the several questions of law raised by the counsel for the defendants. The jury found for the plaintiffs, for the amount of the draft and interest. The defendant having excepted to the various decisions made against him, and also to the charge of the judge, moves for a new trial.

*J. A. Spencer,* for the defendant.

*S. Beardsley,* for the plaintiffs.

*By the Court,* SAVAGE, Ch. J. As the verdict of the jury was in part founded upon the testimony of *Hathaway,* the first question to be considered is, whether he was a *competent witness.* Was he interested? Who was the beneficial owner of the draft, and the *plaintiff in interest* in the cause? The president of the bank testified that the bank had no interest in the matter—and it had not, because *Hathaway,* for whose benefit the draft was discounted, had virtually paid it, and had indemnified the bank against the costs. *Nominally,* however, the bank were the owners: and for the purpose, probably, of making Hathaway a competent witness, he released to the bank his interest in the damages, and they released him from

their claim upon him for the costs. This changes the situa-
tion of the parties nominally only. If the plaintiff succeed,
Hathaway cannot claim the damages in the suit, but he will
be entitled to his *deposit* which he made to meet the payment.
If the plaintiffs fail, Hathaway will lose his deposit, which
the bank will then apply to the payment of the draft. So that
virtually he will be the loser as to the damages, and the bank
will lose the costs, having released him from his indemnity.
But there is an interest which cannot be released between
Hathaway and the plaintiffs, and that is his liability to the
defendants for costs. He being in equity the owner, the bank
being a mere *trustee* and he the *cestui que trust*, he may be
compelled by attachment to pay the costs, in case of failure to
recover. This is an interest which can be released by the de-
fendant alone. 9 Cowen, 631. 6 Wendell, 658. Jay Hatha-
way was therefore interested in the event of the suit, and the
only person interested to the amount of the draft and interest,
or rather to the amount of his deposit for its payment.

It is contended by the plaintiffs' counsel, that whether
Hathaway was interested or not is immaterial, as the same
facts were proved, as it is contended, by other witnesses. It
cannot be denied that his testimony was material to the point
upon which the cause was put to the jury, and may have
been the testimony upon which the verdict was founded. If
it was incompetent, that is a sufficient reason for granting a
new trial.

It will be proper, however, to notice the other points which
were raised at the circuit and overruled, and excepted to.
These are, 1. That the promise of September 27th to accept
the draft was contingent and not in writing, and therefore not
negotiable; 2. That neither the promise contained in the let-
ter of November 10th nor the subsequent arrangement made at
Western, would enable the plaintiffs to support this action, both
being made long after the draft was discounted by the plain-
tiffs; 3. That there was a variance between the declaration
and the proof; the declaration stating an accepted bill, the
proof showing it was not accepted; 4. That there was no
subsequent promise to accept; 5. That if there was a con-
tract to accept, there was no consideration for such promise;
6. The charge was also excepted to.

ALBANY,
Oct. 1834.

Ontario Bank
v.
Worthington.

*First.* Was the parol agreement to accept upon condition, valid and available to the plaintiffs? Previous to the operation of the revised statutes, 1 R. S. 768, § 6, 7, 8, 9, it was well settled that a *parol acceptance* was valid of a bill *already drawn;* but no case has been referred to, nor have I been able to find any, where a *parol agreement* to accept a bill *to be drawn in future,* made with the drawer of the bill, has been held valid in the hands of an endorsee, between whom and the drawer no communication had passed, and who had not taken the bill upon the faith of any such promise. On the contrary, it has been decided in *Johnson v. Colling,* 1 East, 98, that a parol promise by a debtor to his creditor to accept a bill to be drawn does not amount to an acceptance of the bill when drawn. A *written promise to accept* is valid, if the bill is taken upon the faith of it, and a consideration paid therefor. A promise to accept. is no doubt valid between the parties to the contract, and if broken, damages may be recovered. But such a promise, says Chief Justice Kent, is not assignable; and it seems to be a little difficult to understand how the endorsee of a bill subsequently drawn can charge the drawer with acceptance, by virtue of such a preceding promise, which is not of itself assignable, and is strictly no part of the negotiable contract. 10 Johns. R. 215. It is only when such promise to accept is shown to a third person, so as to create credit and induce such person to advance money upon it, that it becomes available in the hands of an endorsee. It is the credit, says Ch. Justice Thompson, which such acceptance or engagement to accept has given to the bill, which gives to it its binding operation. 15 Johns. R. 13. A written agreement to accept was of course in the contemplation of the learned judges last referred to. From any thing appearing in this case, I am unable to say that the present plaintiffs can avail themselves of the parol arrangement of the 27th September, 1829, between the defendant and Putnam.

The next question is, whether the promise contained in the letter of November 10th will enable the plaintiffs to support this action. This is connected with the judge's charge, which was, that if the defendant agreed to accept without reference to remittances for previous advances, the plaintiffs having notice of the letter, were entitled to recover. The rule establish-

ed in this court is stated by Sutherland, justice, in *Parker* v. *Greele*, 2 Wendell, 548 : " A promise to accept a bill thereafter to be drawn, specifying the amount and time of payment, so as to leave no reasonable doubt as to the identity of the bill intended to be accepted, is, if shown to a third person, who, on the faith of such promise, takes the bill for a valuable consideration, in point of law, an acceptance binding the person who makes the promise." In *Mason* v. *Hunt*, Doug. 296, Lord Mansfield says : " If one man, to give credit to another, make an absolute promise to accept his bill, the drawer or any other person may show such promise upon the exchange to get credit, and a third person who should advance his money upon it would have nothing to do with the equitable circumstances between the drawer and the acceptor ; but an agreement to accept is still but an agreement, and if it is conditional, and a third person takes the bill, knowing of the conditions annexed to the agreement, he takes it subject to such conditions." And hence it is that a third person may be in a better situation than the drawer. It is the fact, that such third person parts with his money upon the faith of the defendant's agreement to accept, which puts him in such better situation. Should the drawer, to whom the promise to accept is made, prosecute for a breach of such promise, the defendant may avail himself of any equitable circumstances existing between them, which may constitute a defence to such action, but he cannot do so in a suit by a third person, who, upon the credit of the defendant's promise parted with his money or property. It seems to me, therefore, that the judge in his charge omitted one very important particular, to wit, that the plaintiffs were not entitled to recover upon this bill, *unless they discounted upon the faith of the defendants letter of November 10th*. There is nothing in the evidence showing that anything was advanced upon the bill, or that it was received upon the faith of the defendant's agreement to accept ; on the contrary, it appears to have been transferred to the plaintiffs, and by them sent to New York to be accepted, before the letter of November 10th was written. The judge, therefore, should have instructed the jury that the plaintiffs, not having advanced any thing upon the credit of the defendant, but having taken the

bill upon the credit of the drawer, the defendant might set up any defence against the plaintiffs which would have been available to him as against the drawer.

The plaintiffs have made a point that the bill was taken for a *pre-existing debt*, and I am aware that Chief Justice Marshall, in *Coolidge* v. *Payson*, 2 Wheaton, 73, says, "but the mere circumstance that the billl was taken for a pre-existing debt, has not been thought sufficient to do away the effect of .a promise to accept." The reason why the holder of the bill is in a better situation than the drawer, is, that upon the faith of the defendant's promise to accept, he has advanced money upon the bill; that reason does not apply to a person who takes it for a pre-existing debt; and the distinction has always been admitted in this state, between negotiable paper taken for an advance of money or other value paid, and paper taken for a pre-existing debt, ever since the case of *Coddington* v. *Bay*, 20 Johns. R. 637. In the one case the holder has nothing to do with the equities between the original parties; in the other, he is in no better situation than the party from whom he received it; and the defendant is in the same situation as if the paper had been passed after it fell due. Such a transfer of negotiable paper is not considered a taking for value, in the usual course of trade. Where the holder receives negotiable paper *bona fide*, upon a consideration paid at the time, his title prevails, but not when received in security of an antecedent debt. A note or bill is not considered as taken in the usual course of trade, unless money or property is given in exchange, or responsibility is incurred. 20 Johns. R. 645 to 652, Spencer and Woodworth, justices. It is true that a person who takes a bill for an antecedent debt .may thereby be induced to relax his exertions to obtain other security. Such, however, is seldom the fact. But if it were, why should he be in any better situation than the defendant, who is a creditor of the person who passed the paper? They are both supposed to be *bona fide* creditors, and equally entitled to payment. The defendant is in possession of the means to indemnify himself; can there be any reason why he should surrender them to another creditor who has never advanced any thing upon the credit of the defendant's paper?

If the plaintiff fails, he loses nothing; he is in the same situation as before he took the paper: and it was his fault that he did not inquire into the value of the paper, and the defence which the defendant might have against it. It is well known that when debtors are failing, the creditors seize upon any thing which affords a hope of payment; it gives them another chance; but their condition has not been thought to give them greater equities than other *bona fide* creditors. In such case the maxim is *melior est conditio possedentis*. It is the fact of parting with property or incurring responsibility upon the defendant's credit, and that alone, which gives the superior equities.

It cannot be denied that the *letter* amounted to a conditional acceptance. Suppose the condition to have been performed, what damages could Putnam have recovered in an action upon the bill? His general indebtedness to the defendant would undoubtedly have been a good defence, he being largely the debtor of the defendant. As the bill was passed in security of an antecedent debt, and not upon an advance of property on the faith of the agreement to accept, the equity in favor of the defendant must prevail over that of the holder.

The other points seem to me to be with the plaintiffs. 1. There was no variance. If the evidence showed an agreement to accept which was valid, the law would construe it an acceptance. The proper mode of declaring, therefore, is, to count upon an accepted bill. Indeed the present plaintiffs could sustain an action by no other mode of declaring. 2. Whether there was a subsequent promise to accept was a question of fact for the jury; and 3. If there was an agreement to accept which amounted to an acceptance, no consideration need be shown, any more than in the case of a promissory note. Bills of exchange and promissory notes import a consideration.

But for the reasons assigned, I am of opinion that Jay Hathaway was an incompetent witness, and also that the judge erred in his charge to the jury. On these grounds a new trial should be granted.

New trial granted.