## Case No. 11,835.

**RILEY et al. v. ANDERSON.**

[2 McLean, 589.] [1]

Circuit Court, D. Ohio. Dec. Term, 1841.

NOTES—ASSIGNMENT—CONSIDERATION—FRAUD —NOTICE.

1. A precedent debt constitutes a good consideration on the assignment of a note.

2. And although there may have been fraud or deception in obtaining the note, yet if the holder had no notice of it, the equities between the original parties are not open.

3. A note received in payment of a debt is a transaction in the ordinary course of business.

4. Circumstances may show that a note was given and received in payment of an account.

[Cited in Leland v. The Medora, Case No. 8,-237.]

[Cited in Bantz v. Basnett, 12 W. Va. 814; Merrick v. Boury, 4 Ohio St. 65.]

At law.

Stanbery & Hunter, for plaintiffs.

Goddard & Converse, for defendant.

OPINION OF THE COURT. The following is a substantial statement of the facts admitted in this case. "Johnson, who resided in Martinsburg, Knox county, Ohio, in May, 1837, had for some years carried on an extensive business as a merchant. The 2d of January, in that year, he was indebted to the plaintiffs, citizens of Pennsylvania, in a sum exceeding three thousand dollars for money loaned; and Van Amringe called upon him, at Martinsburg, for payment, but obtained nothing. On that day Van Amringe and Johnson rode together to Nashport, where the defendant, Anderson, resided and kept a store, in connection with Johnson. They arrived late in the afternooon, and took lodgings near the store. In the evening Johnson called on Anderson and inquired if he did not want money. Anderson replied he could use it if he had it. Johnson then said he was going to Zanesville the next day and would try the banks; that it was best to draw two notes for fifteen hundred dollars each, and if he could get the three thousand dollars, one thousand should go to the Nashport establishment. He then wrote in figures $1500 at the top of the left hand of two pieces of paper, and he and Anderson and Shipley signed their names, following each other, to each piece of paper, on the right hand, some distance from the top, leaving room and intending to have promissory notes written over their signatures. Johnson took the papers, returned to his lodgings and handed them to Van Amringe, who dated them 2d January, 1837, and filled them up as notes for fifteen hundred dollars each—one at ninety days after date, payable to the order of the plaintiffs at the Bank of Granville; the other in like manner, at four months. Van Amringe and Johnson left Nashport the next morning, the former not having visited the store or met Anderson during his stay. He received the

[1] [Reported by Hon. John McLean, Circuit Justice.]

notes of Johnson in part of the plaintiff's account against him, and gave him credit on account for $3,000." "The notes were left at the Granville Bank for collection, where they were protested for nonpayment, and the plaintiffs then charged them to Johnson. Up to May, 1837, Johnson was in good credit, and was supposed to have ample means to pay a sum much larger than was the amount of the two notes; but he shortly after absconded, being insolvent, and leaving the plaintiffs the above notes as the only security for their demand." Sometime after the execution of the above notes, a contract was made between the plaintiffs and one David Cummins, of the state of Indiana, in which the latter, in consideration that the plaintiffs should not institute a suit against Johnson, and that they should place in nis hands the above two notes to be collected for his benefit, agreed to pay two thousand dollars and upwards of the debt of Johnson to the plaintiffs, &c. This action is brought on the note payable in four months.

It is first objected that the contract with Cummins takes from the plaintiffs the right of prosecuting this action. But no such effect can be given to that contract. It gives the proceeds of the note to Cummins, and provides for the payment of the costs of any suit that may be brought upon it: but it gives the right to Cummins to sue in the name of the plaintiffs, as there was no regular indorsement upon the note. The first ground taken is that this note having been given for a past consideration, leaves the equities between the original parties open. This position is sustained by the supreme court of Ohio in Riley v. Johnson, 8 Ohio, 526. That action was on the other note, payable in ninety days. As that case involved the same facts and circumstances, as the one under consideration, it is in point. The court say: "The notes in question were not received in the usual course of trade, for a valuable consideration, in the meaning of those terms, applicable to such cases, but for a precedent debt. Failing in this suit, the plaintiffs lose nothing. They remain in the position they were in when they took the notes, and may sue on their original cause of action. The notes received were no payment and bar no right." In Bay v. Coddington, 5 Johns. Ch. 54, Chancellor Kent said "that negotiable paper can be assigned or transferred by an agent or factor, or by any other person, fraudulently, so as to bind the true owner as against the holder, provided it be taken in the usual course f trade, and for a fair and valuable consideration without notice of the fraud." But he observed "that the holders in that case were not entitled to the benefit of the rule, because it was not negotiated to them in the course of business or trade, nor in payment of any antecedent and existing debt." &c. This decision was affirmed in the court of errors. 20 Johns. 637. There was a considerable diversity among the members of the court, some of them holding that a pre-existing debt was not a sufficient

consideration to close the equities between the original parties. But since that decision there are many cases in New York, where the supreme court has held that an antecedent debt did not constitute a sufficient consideration. 9 Wend. 107; 10 Wend. 85; Ontario Bank v. Worthington, 12 Wend. 593; Payne v. Cutler, 13 Wend. 605; and in 16 Pick. 574; 3 Kent, Comm. 80. The recent cases, however, in New York have shaken, if not overruled, the above decisions. Bank of Salina v. Babcock, 21 Wend. 490; Bank of Sandusky v. Scoville, 24 Wend. 115. The supreme court of Ohio followed the earlier decisions in New York. As the question, however, is not local but of a general interest, the decision in Ohio does not constitute the rule for this court. The construction of a statute by the supreme court of a state is followed by this court, as it constitutes a rule of property and as the rule should be the same in the courts of the United States; and for the same reason on all questions of a general and commercial character, the rule established by the federal courts should be followed by the local tribunals.

The case under consideration must be considered as resting upon general principles. And viewing it in this light, it will be found that the decisions in New York and the one in Ohio are in conflict with those which have been made on the same subject in England, and, also, against the weight of authority in this country. In Pillans v. Van Meirop, 3 Burrows, 1664, the point was decided. Baily, Bills (London Ed., 1830) 499, 500; Bosanque v. Dudman, 1 Starkie, 1; Heywood v. Watson, 4 Bing. 496; Bramah v. Roberts, 1 Bing. N. C. 469. Indeed, in the numerous cases which might be cited from the English authorities it has been uniformly held, that a precedent debt is a good consideration. The dictum of Lord Chief Justice Abbott, in Smith v. De Witts, 6 Dowl. & R. 120, and, also, in the case of De La Chaumette v. Bank of England, 9 Barn. & C. 209, does not go against the general doctrine. Those cases turned upon different principles, and the remarks of his lordship seem to have been loosely made or inaccurately reported. In Coolidge v. Payson, 2 Wheat. [15 U. S.] 66, 70, 73, and Townsley v. Sumrall, 2 Pet. [27 U. S.] 170, 182, are in point. And in Brush v. Scribner, 11 Conn. 388, an able and most elaborate view of the authorities is taken by the supreme court of Connecticut, and in which they come to a conclusion against the New York decisions on this subject. It seems to be clear that on principle and authority the New York decisions, on this point, are wholly unsustainable. The payment of a debt, it is to be hoped, has not yet become an act "out of the ordinary course of business." And no good reason can be supposed why such debt should not constitute as good a consideration for a note or the assignment of a note, as where money or property is paid at the time. It is insisted that Johnson fraudulently procured the signature of the defendant and of the others, to

the blank notes, and, consequently, that the plaintiffs cannot be considered as bona fide holders of the paper. Here it will be for the jury to decide whether the evidence in the first place establishes a fraud; and in the second, whether the plaintiffs had any knowledge of it. If they participated in the deception alleged to have been practiced, by Johnson, or had notice of it, they cannot recover on the notes. The fact of the notes having been signed in blank, with the sum marked on each, at the top of the paper, is not a circumstance calculated to put the plaintiffs on inquiry. It was, indeed, an ordinary transaction, in commercial arrangements, and gave authority to the holder of the paper to fill up the notes with the sums designated. It will be, however, for the jury to determine whether the plaintiffs received the note now in question, under such circumstances, as to have put them upon inquiry. The notes were regularly entered as a credit on the account current against Johnson. From this entry it would seem that the notes were received in payment; and the fact that after Johnson had failed to pay the notes and they were protested, they were charged on the general account, does not rebut this inference. The account was due to the plaintiffs when the notes were executed. This changed the demand from an open account, to promissory notes, and extended the time of payment three and four months. It is said that a promissory note does not extinguish an open account, unless it is given expressly in payment. But the object of giving a note may as well be ascertained from circumstances as from an express agreement. In the present case the account was over due, by the usual terms of credit given on purchases of merchandize; and the fact that a further credit was given on the execution of the notes, shows that the notes were substituted for the account. And this view is greatly strengthened by the credit given on the general account for the notes. Upon the whole, the court instructed the jury that if the plaintiffs had no notice of the fraud or deception practiced by Johnson, and the notes were received in payment of the account, they should find for the plaintiffs.

Verdict for the plaintiffs.

NOTE. The very point ruled in this case has since been decided in Swift v. Tyson, 16 Pet. [41 U. S.] 1. The supreme court of Ohio have since overruled their first decision.

Refused by THE COURT. Verdict for the plaintiff, $20.