BRAMHALL & als. versus BECKETT.

If a mere accommodation note, given without consideration, be indorsed by the payee, before its pay-day, bona fide and for a valuable consideration, in the usual course of business and trade, to one who has no knowledge of any facts or circumstances, which would discredit it, the indorsee takes it freed from the defence that it was originally given without value.

But when the indorsee takes such a note merely as collateral security for a pre-existing debt, without parting with any right or extending any forbearance, or giving any consideration, he is not to be regarded as the holder for a valuable consideration.

Such a transaction is not according to commercial negotiations in the usual course of business and trade.

In a suit by such an indorsee upon such a note, the defence is open to the maker, that the note was made without value.

ASSUMPSIT, by the indorsee upon a negotiable note.

The case was submitted upon a statement of facts. The note was given without consideration, as an accommodation note, on the statement of the payee simply, that he wished to have the note to use. The note was given and dated the 29th of May, 1849, payable in thirty days. On the same 29th of May, the payee, being indebted to the plaintiffs, (on a demand, which was then already payable and which has not yet been paid,) indorsed the note to the plaintiffs, as collateral security for the payment of said demand. Nothing was paid and no claims given up by the plaintiffs for the note ; nor was there any agreement for any extension of the old debt, nor any other consideration for the indorsement, except that it was made for said collateral security.

*M. M. Butler*, for the plaintiffs.

The note was received by the plaintiffs in the ordinary course of business. As against them the want of consideration for the note cannot be inquired into.

The point was not material to the decision of the cases of *Homes* v. *Smyth*, 16 Maine, 177 ; and *Norton* v. *Waite*, 20 Maine, 175 ; and the remarks of SHEPLEY, C. J. in delivering the opinion of the court were *obiter dicta*. Besides, a differ-

ent state of facts existed in the above named cases, from those in the case at bar.

Suppose, before a note is payable, a mortgage is made of property, real or personal, as collateral. There would be a sufficient consideration. Surely then negotiable paper ought to be valid. The rule of law ought to be the same, as to all sorts of security.

But, if such inquiry were admissible, the plaintiffs are entitled to recover. The note was furnished by the defendant to the payees to be "used" by them for such purposes as they pleased. It was an accommodation note. The rights and duties of the several parties to an accommodation note, are the same as in those denominated business notes. *Chandler* v. *Barlow*, 7 Pick. 547; *Chicopee Bank* v. *Chapin*, 8 Metc. 40; *Lincoln* v. *Stevens*, 7 Metc. 29; *Thompson* v. *Shepard*, 12 Metc. 311.

The equities are not with the defendant who put the note in circulation, to be used. They are with the plaintiffs.

When the indorsers of an accommodation note lend their names to the drawer, without any limitation or restriction, as to the manner in which it is to be used, he has the right to apply it to the payment or *security* of an antecedent debt, or to sustain his credit in any way. *Granden* v. *LeRoy*, 2 Paige, 209; 20 Johns. 288; 4 Cowen, 567; 5 Wend. 66.

*Fessenden & Deblois*, for the defendant.

The note, being without consideration between maker and payees, and the payees having received nothing from the indorsee for their indorsement, was without consideration between plaintiffs and defendant, and therefore payment of it could not be enforced. 3 Kent's Com. § 44 — 81; *Bay* v. *Coddington*, 20 Johns. 637; *Rosa* v. *Brotherson*, 10 Wend. 86; *Ontario Bank* v. *Worthington*, 12 Wend. 593; *Paine* v. *Cutler*, 13 Wend. 605; *Chicopee Bank* v. *Chapin*, 8 Metc. 43; *Homes & al.* v. *Smyth*, 16 Maine, 177; *Norton* v. *Waite*, 20 Maine, 175; *Smith* v. *Babcock*, 2 Woodbury & Minot, 246. In *Swift* v. *Tyson*, 16 Peters, 1, though the opin-

ion of STORY, J. was against us, his reasoning was in our favor.

HOWARD, J. — The question presented by the statement of facts is, whether a negotiable note, given by the defendant for the accommodation of the payees, and indorsed by them in blank to the plaintiffs, before maturity, and without notice of a defence, as collateral security for a pre-existing debt due from the indorsers, is open to the equities existing between the original parties; or whether the plaintiffs are entitled to protection as holders for a valuable consideration, within the meaning and policy of the commercial law.

It is now well settled that the want or failure of consideration will constitute a valid defence to an action on a bill or note, between the primary parties. So if one become a party to such instrument, merely for the accommodation of another, he may insist upon that fact, as a bar to an action thereon by any party, for whose accommodation the instrument was made. But if the instrument be negotiated *bona fide,* for a valuable consideration, to one who is not apprised of any facts, or circumstances which would discredit it, the accommodation party cannot be admitted to such defence.

If an accommodation bill or note be fraudulently negotiated, and come to the holder fairly, and without a knowledge of the fraud, and he receive it in satisfaction, or extinguishment, wholly or partially, of a pre-existing debt, he must be considered a *bona fide* holder for a valuable consideration.

These are doctrines of commercial law, upon which the authorities harmonize. But when the bill or note is taken as collateral security only, for a precedent debt, it is contended that the creditor cannot be deemed the holder for a valuable consideration. On this point the authorities have recently been supposed to be in conflict, and the law to be unsettled.

No case has been found in their reports, presenting this precise question, upon which the courts in England have given a direct opinion. There are diverse *dicta* to be found, from which we may infer what might be the opinions of individual

Judges, if a case were presented for decision, involving the question. As in the cases *Collins* v. *Martin*, 1 Bos. and Pul. 650 ; *Heywood* v. *Watson*, 4 Bing. 496 ; *De la Chaumette*, v. *the Bank of England*, 9 Barn. & Cres. 209 ; *Smith* v. *DeWitt*, 6 Dowl. & Ryl. 120 ; *Bramah* v. *Roberts*, 1 Bing. New Cases, 469.

In New York, the chancellor, Kent, held in 1821, that, where the holder of negotiable notes had not received them in payment of any antecedent and existing debt, nor for cash or property advanced, debt created, or responsibility incurred on the strength and credit of the notes, but as security merely for such debt, he was not a holder for a valuable consideration, so as to give him any equitable right to detain them from the lawful owner, and that such negotiation was not in the usual course of business or trade.

*Bay* v. *Coddington*, 5 Johns. Ch. 54 ; *Coddington* v. *Bay*, same case, 20 Johns. 637, in the Court of Errors, where the judgment of the chancellor was affirmed, in 1822.

The cases of *Wardell* v. *Howell*,, 9 Wend. 170 ; *Rosa* v. *Brotherson*, 10 Wend. 85 ; *Ontario Bank* v. *Worthington*, 12 Wend. 593 ; *Payne* v. *Cutler*, 13 Wend. 605 ; *Williams* v. *Smith*, 2 Hill, 301 ; *Bank of Salina* v. *Babcock & als.*, 21 Wend. 499 ; *Bank of Sandusky* v. *Scoville & als.*, 24 Wend. 115, and *Mohawk Bank* v. *Corey*, 1 Hill, 513, are to the same effect, and follow the doctrines of *Coddington* v. *Bay*, 3 Kent's Com. 81.

Afterwards, in 1842, the Supreme Court of the United States, say, in *Swift* v. *Tyson*, 16 Peters, 19, " Assuming it to be true, (which, however may well admit of some doubt from the generality of the language,) that the holder of a negotiable instrument is unaffected with the equities between the antecedent parties, of which he has no notice, only where he receives it in the usual course of trade and business for a valuable consideration, before it becomes due ; we are prepared to say, that receiving it in payment of, or as security for a pre-existing debt, is according to the known usual course of trade and business." Thus disagreeing with the courts

of New York, on the point now presented for our consideration. Though this point was not raised in that case, yet it was elaborately discussed, by Mr. Justice STORY, and the leading English and American authorities extensively examined, and commented upon. Mr. Justice CATRON concurred in the decision of the court, but dissented from the "introduction, into the opinion of this court, of a doctrine aside from the case made by the record, or argued by the counsel, assuming to maintain, that a negotiable note or bill pledged as collateral security for a previous debt, is taken by the creditor in the due course of trade ; and that he stands on the footing of him who purchases in the market for money, and takes the instrument in extinguishment of a previous debt."

Subsequently, in 1843, the case of *Stalker* v. *McDonald,* 6 Hill, 93, was carried to the Court of Errors, in New York, apparently to induce that court to overrule its decision in the case of *Coddington* v. *Bay,* and to conform to the opinion of Mr. Justice STORY, in *Swift* v. *Tyson.*

Chancellor Walworth, after a learned and elaborate review of the decisions of the courts in England, and in several of the United States, (more especially those cited by Mr. Justice STORY, in his opinion referred to,) re-affirmed the doctrines of *Coddington* v. *Bay,* and disapproved of the conflicting doctrines advanced in *Swift* v. *Tyson.*

The courts of New York are, therefore, committed to the doctrines of *Coddington* v. *Bay.* And the Supreme Court of the United States do not appear to have maintained different doctrines, excepting as evinced by their assent to the opinion of Mr. Justice STORY, referred to ; and that, in a case where the point was not raised, and where the decision turned upon other considerations.

In New Hampshire, the doctrines of *Coddington* v. *Bay,* are recognized and maintained. *Jenness* v. *Bean,* 10 N. H. 266 ; *Williams* v. *Little,* 11 N. H. 66.

In Massachusetts, it would seem that the same doctrines are approved. *Chicopee Bank* v. *Chapin,* 8 Metc. 40 ;

*Thompson* v. *Shepherd*, 12 Metc. 311; *Washington Bank* v. *Lewis*, 22 Pick. 32.

So in Connecticut, *Brush* v. *Scribner*, 11 Conn. 388, and in Pennsylvania, *Petrie* v. *Clark*, 11 Serg. & Rawle, 377; and by the Circuit Court of the United States, first circuit, *Smith* v. *Babcock*, 2 Woodbury & Minot, 288.

In this State, the question now under consideration has never been directly presented for decision. In *Homes* v. *Smyth*, 16 Maine, 177, and *Norton* v. *Waite*, 20 Maine, 175, the opinions may be considered as favoring the doctrines advanced in *Coddington* v. *Bay*. In *Smith* v. *Hiscock*, 14 Maine, 449, the opinion proceeds upon the ground that the plaintiff, having paid a valuable consideration for the note, to Bachelder, "a fair holder for value" before it fell due, was entitled to recover, although it was passed to him, after it became payable. The note was indorsed to Bachelder, by the payee, with authority to make sale of it to pay a demand which he held, as deputy sheriff, against the payee. In pursuance of such authority it was sold to the plaintiff for that purpose, in good faith, and upon a full consideration paid, in conformity with an agreement made before, and executed after the note was payable.

The learned author of Story on Promissory Notes, (§ 195,) re-asserts the doctrine advanced by him in *Swift* v. *Tyson*, and cites Chitty on Bills, ch. 3, p. 74, (11th edition,) and Bayley on Bills, ch. 12, p. 500, 501, in support of his position. But it is not perceived that they support his doctrine to the full extent. Mr. Chitty says, "if a bill or note be indorsed as collateral security, that is an adequate consideration to enable the party to sue thereon, though he advanced no new credit on the bill or note;" and this is unquestionably correct, when no defence exists upon the merits.

It is believed that, upon a careful examination of the English and American decisions, including those cited by these learned authors, it will be found that the doctrines of chancellors Kent and Walworth, to which reference has been made, are not impaired, but rather supported by the weight

of authorities, although it may be remarked that the editor of Smith's Mercantile Law, (American edition, 1847,) in a note, p. 258, appears to have formed a different conclusion.

Thus stand the authorities, so far as we have examined them.

We hold, however, upon general principles, as well as upon authority, that the indorsee of an accommodation bill or note, who has given no consideration for it, and who does not claim through a party for value, is not entitled to protection against the equities of the accommodation maker, accepter, or indorser ; but in the language of EYRE, C. J. (1 Bos. and Pul. 650,) "he is in privity with the first holder, and will be affected by every thing which would affect the first holder."

If he receive a bill or note as collateral security merely, for a pre-existing debt, without parting with any right, extending any forbearance, or giving any other consideration, the transaction will not constitute a commercial negotiation in the usual course of business and trade, and he cannot be regarded as the holder for a valuable consideration.

If this suit were brought by the payees of the note, the defendant, as accommodation maker, might rely upon the want of consideration as a valid defence ; and when brought by the indorsee, who has neither given, nor forborne any thing for, or on account of it, and who, by legal effect, is prosecuting the suit for the benefit of the payees, the defence must be alike effective.

If this note were paid, it would be for the benefit of the payees; if not collectable, and any loss result therefrom, it would be their loss. Their indebtment to the plaintiffs was not affected by the transfer. They obtained no credit thereby. Neither party assumed any new liabilities, or relinquished any present rights in the operation. It was not a commercial negotiation within the meaning, policy, and protection of the commercial law. *Plaintiff's nonsuit.*