NATHAN NUTTER *versus* NORTON STOVER, 2d.

If a person entrusts his promissory note to another and the latter agrees to indorse it, get it discounted, and apply the proceeds to pay another note, but fails to do so, he has no such property in the note entrusted to him, as will enable him to maintain an action upon it against the maker.

The holder of a promissory note, taken in the ordinary course of business, for a valuable consideration, before it is due, and without notice of any defect in the title, or right of the person transferring it, may collect it of the maker, although the original holder had obtained it wrongfully, or held it in trust for a specific purpose for the benefit of the maker, or for any other cause had no legal right, as against the maker, to transfer it.

But, in order to let in the defence, express notice of a defect in title or right is not indispensable; it is sufficient, if the circumstances are of such a character as necessarily to cast a shade upon the transaction and put the holder on inquiry.

One, who receives a note merely as collateral security for a pre-existing debt, cannot be regarded as a holder for a valuable consideration.

A note, not valid against the maker, is not a sufficient consideration for a new note given in *renewal* of the other.

Nor is a note, not valid against the maker, *although indorsed by the person on whose account it is held as collateral security*, a sufficient consideration for a new note given in renewal of the other.

Declarations of the maker of a note given for an old one, at the time of making the note, are not admissible to affect his legal liability on the note; but are admissible to show whether the new note is entirely a new contract, or an extension of the old one.

ON REPORT. Case referred to the Court.

ASSUMPSIT upon a promissory note, signed by the defendant and indorsed by one Stevens. The facts found by the Court, as proved by the evidence, and questions arising thereon, are stated in the opinion.

*J. C. Woodman*, for plaintiff.

I. The note in suit being given in renewal of the old note, if there was a consideration for the latter, there was for the former.

The agreement of Stevens to take up the $405 note was a sufficient consideration for the old note.

A promise is a good consideration for a promise; and it is

so previous to performance and without performance. 1 Parsons' Con., 372; 1 Com. Con., 14; *Gower* v. *Capper*, Cro. Eliz., 543; *Cartwright* v. *Cooke*, 3 Barn. & Ald., 703; *Wentworth* v. *Bullen*, 9 B. & C. 840; *Miller* v. *Drake*, 1 Caines, 45.

II. But the note given up was indorsed by Stevens, and, therefore, the second note was on good consideration, even if the first note was not. The waiver of the plaintiff of his right against Stevens was a sufficient consideration. 1 Parsons' Con., 369.

III. Nutter was a *bona fide* holder of this note for a valuable consideration, without notice of any want of right in Stevens to dispose of it for his own benefit.

*Shepley & Dana*, for the defendants.

The opinion of the Court was drawn up by

KENT, J.—The first question in this case is, whether the original note for $130, for which the one in suit was afterwards substituted, was on a legal and sufficient consideration, so that an action might have been brought at once, by Stevens, to whom it was given. The plaintiff contends that there was sufficient consideration, in a promise for a promise.

The facts on this point are substantially these. Stover, the defendant, had given his note for $405 to Stevens, which note Stevens had transferred to the Canal Bank. Before it became due, Stover had, from time to time, loaned sums to Stevens, and being about to go on a journey to Baltimore, he gave Stevens a note for $130, and enough more money, added to what he had before lent him, to make up the $405, coming due on the note. The arrangement seems to have been, that Stevens was to get the note for $130 discounted, and, with that money, and what had before been loaned or left with him, to take up the note for $405 when it should become due. This he did not do.

Assuming that Stevens did promise or agree to take up the note at the bank, was that such a consideration, for the note

of $130, as would enable Stevens to maintain an action on it against Stover, at once, or before he had performed his agreement? We think not. The whole transaction was in the nature of a bailment, of the kind denominated *mandatum*.

If one has property entrusted to him, in order that he may do something in, or about, or with the property, if he accepts the property and trust, this is a contract on a consideration, and he may be held for any failure in the discharge of his obligation. But such a contract does not transfer the property in the thing bailed to the bailee, or enable him to sue in his own name a note thus entrusted to him. If it did, then any express-man, who had taken an indorsed note, agreeing to carry it to a bank in another town and get it discounted, and, with the money, pay a debt of the person employing him, to a third party in that town, could at once sue the note as his own, and set up his promise to carry the note, and get it discounted, and apply the money as directed, as a good consideration to sustain his action.

If, in consideration of the note and money, Stevens had agreed, at all events, to take up the note for $405, and to discharge Stover from all liability thereon to him, and to receive this note for $130 in payment, and such an absolute and final arrangement had been executed, then a sufficient consideration would appear. *Cushing* v. *Wyman*, 44 Maine, 121. But the facts in this case do not establish any thing beyond, at most, a promise to do a certain thing with the note if he could, and to apply the proceeds towards the payment of a note in the Canal Bank. It was simply a delivery of certain things to Stevens, as his agent or bailee, to do with them as directed. There was no release, and no agreement to take up the note, except as he might be supplied by funds derived from a discount of this note delivered to him. A promise is not a good consideration for a promise, unless there is an absolute mutuality of engagement, so that each party has a right at once to hold the other to a positive agreement. *Biddel* v. *Dowse*, 6 B. & C., 255, and *Hopkins* v. *Logan*, 5 M. & W., 241.

In the case at bar, all that Stevens agreed to do was to get the note discounted, and apply the proceeds. If he could not get a discount, or obtain money on the note, he was under no legal obligation to defendant to take up the large note at the bank. If he did take it up as indorser, without such aid from this note, he would have had a right to recover of Stover on the note, at least the deficiency beyond the cash he had received.

We conclude, then, that Stevens could not have maintained an action on the first note against the defendant. He had not any claim on Stover, for he did not perform, as bailee of this note, the undertaking he had voluntarily assumed.

The plaintiff further contends that he is entitled to recover, on the ground that he was a *bona fide* holder of the first note, for a valuable consideration, without notice. If he was, he undoubtedly acquired a legal right in the note as indorsee, although Stevens might not have any right. Did he take it, giving value — and did he take it without such notice as would debar him from claiming as a *bona fide* holder?

The law is well settled, that if a person takes a negotiable note in the ordinary course of trade, giving value for it, before it is due, and without notice of any defect in the title or right of the person transferring it, he may recover the amount, although in fact the original holder had obtained it wrongfully, or held it in trust for a specific purpose, for the benefit of the maker, or from any cause had no legal right as against the maker to transfer it. *Wheeler* v. *Guild*, 20 Pick., 549, and numerous other authorities.

The question on this part of the case is, had the plaintiff sufficient notice of the defect of title, or want of authority in Stevens? This fact, perhaps, might have been more satisfactorily determined by a jury, who had seen as well as heard all the witnesses, and who could therefore, with that advantage, pass upon whatever of contradiction appears in the testimony. There seems to be no doubt that defendant and Stevens had at times accommodated each other by loans and signatures to notes. It also appears, that the plaintiff was

somewhat familiar with both, and was aware that there were such transactions. The plaintiff says that he was so told by Stevens. The plaintiff "made Stevens' counting-room his stopping place; and was in the habit of getting money for Stevens, on his, (Stevens',) checks indorsed by plaintiff." There was, evidently, a close intimacy and considerable knowledge of each other's affairs. The defendant testified, that the first knowledge he had of Stevens' failure was from the plaintiff, who informed him of the fact, and, also, that "Stevens had not paid his note for $405." How he knew that there was such a note, and that Stevens had promised to take it up, does not appear. The argument is, that, if he knew the fact, he probably also knew why and how he was to raise the money.

Stevens swears positively that the plaintiff knew he had this note, and asked him for it; that he told him that "the (Stover) note did not belong to him, and he, (plaintiff,) must not use it; that if he did use it, he must take it up when it became due." The defendant testifies, that plaintiff told him that "when Stevens gave him the note he told me I ought not to use it." The plaintiff does not, in direct terms, deny that such conversation took place. He admits that Stevens objected to letting him have the note; that he said he did not wish to let him have it. He says, that afterwards he "saw Mr. Stevens, and he authorized me to negotiate the $130 note, and I did." He also states, that he knew nothing about the transactions between Stover and Stevens, until he saw Stover in the cars after his return from Baltimore, when Stover told him. All this may be true, and yet Stevens might have told him, what he swears he did, about not owning the note; and plaintiff might have told the defendant that Stevens did tell him that he ought not to use the note. We have, then, the testimony of two witnesses, not directly, or by necessary inference, contradicted by plaintiff.

Taking this testimony and the surrounding circumstances into consideration, we think the clear preponderance of the

evidence is, that the notice, testified to by Stevens and defendant, was in substance given.

Was this sufficient? "Express notice is not indispensable, but the notice will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction, and to put the holder upon inquiry." *Cone* v. *Baldwin*, 12 Pick., 545; *Hall* v. *Hale*, 8 Conn., 336; *Evans* v. *Kymer*, 1 B. & Ald., 528; *Carr* v. *Hilton*, 1 Curtis, 390.

We cannot doubt that the plaintiff had sufficient notice to put him on his guard and on inquiry, and that he did not take the note in the common course of business, without notice. He cannot claim the right of an innocent indorsee of the first note, for value, without notice.

The evidence in the case leaves the actual transaction between Stevens and the plaintiff, in relation to the first note, somewhat in doubt. Stevens represents, in substance, that the plaintiff had aided him in obtaining money, and that he was on his check as indorser, and perhaps otherwise his creditor, and that he let him have this note as collateral security, and to raise money upon to meet his liabilities. The plaintiff seems to convey the idea that he in fact bought this note and paid for it; that he let Stevens have $100, in cash on Saturday, and took this note afterwards for the $100, and paid the balance of $30, to Stevens. But, this view is not consistent with his own statement, that "he *afterwards* saw Mr. Stevens, and he authorized me *to negotiate* the $130 note, and I did." If he had before bought the note and paid for it, and taken it absolutely by purchase, why should he seek for the consent of Stevens to negotiate it? The fact probably was, that there was some looseness in the transaction, and that the note was, in fact, handed to plaintiff to secure him, and to aid him in raising money. At least, in the conflict of the testimony, the somewhat indefinite statements of the plaintiff cannot sustain the assumption of an absolute sale of the note to him, against the positive testimony of Stevens, and the probabilities of the case.

In the case of *Bramhall* v. *Beckett,* 31 Maine, 205, this Court, after full consideration and examination of numerous authorities, decided that, where a person receives a bill or note, as collateral security merely, without parting with any right, extending any forbearance, or giving any other consideration, the transaction will not constitute a commercial negotiation in the usual course of business, and he cannot be regarded as holder for a valuable consideration. See, also, *Evans* v. *Kymer,* before cited; a case which resembles this in many particulars.

But the plaintiff claims that the note in suit is not the original note for $130, given by defendant to Stevens, but another note, for the same sum, given by defendant directly to the plaintiff, and that there was a new and independent consideration for the note in suit.

The consideration for the new note was the old note given up. The declaration of defendant, when he gave it, that he never would pay it, could not affect his legal liability, created by the written contract and his signature. It could only bear upon the question whether it was an entirely new contract, or a mere extension of the old, the defendant reserving all his right to resist the payment of the new note as well as the old. On the other hand, any verbal and additional promise to pay the note when it became due, could add nothing to his legal liability. The defendant's written contract binds him, unless he has a defence to the contract.

He admitted to Mr. Brown, that he gave the note, but said " that it was not for him to pay." His defence is, that there was no legal consideration for this second note. This depends upon his legal liability on the first. A mere renewal of a note, which is not valid against the party, cannot be a sufficient consideration to support the new note, which simply takes the place of the other. Even if a man, by mistake of facts, supposes himself indebted when he is not, and gives a note for the sum claimed, he may undoubtedly show a failure of consideration. We have before determined that the plain-

tiff could not maintain an action against the defendant on the first note.

But the plaintiff further insists, that there was a new consideration, viz., the giving up of the old note, which had the indorsement of Stevens on it. This might be a good consideration, if the plaintiff, by such surrender, did in fact give up any valuable claim on Stevens as indorser. If he had been the absolute owner of the note, and Stevens, by his indorsement, was held beyond his former liability to the amount of this note, and if due notice had been given, then the plaintiff would have had a direct and presumptively valuable interest in Stevens' indorsement.

But, if it was in his hands merely as collateral security, then any payment would have been for Stevens' benefit. Stevens' indebtedness to plaintiff was not affected by the transfer. His indebtedness and liability remained the same. If he paid, as indorser of this note, $130 to plaintiff, that would reduce his debt to plaintiff, by that amount. If he did not pay it, his original liability continued. It does not appear in the case that the note was protested, or a demand on Stevens made. But we do not decide the case upon that point.

According to agreement of the parties, it appearing that the action cannot be sustained, the judgment must be —

*Plaintiff nonsuit.*

TENNEY, C. J., RICE, APPLETON, DAVIS and GOODENOW, JJ., concurred.