TUCKER *v.* THE NEW HAMPSHIRE SAVINGS BANK IN CONCORD.

State and municipal bonds issued to blank payee are transferred, without indorsement, by delivery, like bank notes, or negotiable notes payable to bearer.

Such bonds, intrusted by the owner to one for safe-keeping, and by him, in breach of his trust, pledged as collateral security for a loan to him by the defendant, who receives them in good faith for value, with no notice of defence, or infirmity of title, cannot be recovered of the defendant by the owner.

TROVER, for two $500 bonds of the state of New Hampshire, payable in twenty-one years "to the order of ——," being part of the municipal war loan provided for by *c.* 3, Laws of 1871, and delivered to William E. Cogswell, agent of Henniker, as part of its share of such bonds. Cogswell, as treasurer of Henniker, sold the bonds to the plaintiff, February 25, 1873, who on the same day deposited them with Cogswell for safe-keeping. February 26, 1875, Cogswell, without the knowledge or consent of the plaintiff, pledged the bonds to the defendants as security for a loan of $1,000 then made by the defendants to Cogswell, who at the same time gave the defendants his note for that sum, payable in six months. Cogswell became insolvent, and died. The plaintiff demanded her bonds of the defendants, July 6, 1875, and, refusal being made, brought this suit for their recovery, August 24, 1875. At the time the bonds were pledged, the defendants had no notice that Cogswell was not the owner, or that the plaintiff had any title to them. The above facts are agreed to. Judgment to be entered for the plaintiff for the value of the bonds, if she can recover; otherwise, for the defendants.

*Asa Fowler*, for the plaintiff.

If the act of Cogswell, in pledging and delivering the bonds, was not wholly illegal and void, it could at most only give a special prop-

erty in the bonds to the defendants as collateral security for the note given for the borrowed money, which note had not become due when the bonds were demanded, or even when the suit was brought. And it is well settled in this state, that where negotiable paper is transferred or taken as collateral security, the holder will take it and hold it, like a chose in action, not negotiable, as trustee for the party transferring it, subject to all the claims to which it would be subject in the hands of such party, since the general property remains in him. *Jenness* v. *Bean*, 10 N. H. 266 ; *Williams* v. *Little*, 11 N. H. 66 ; *Fletcher* v. *Chase*, 16 N. H. 39 ; *Bank of Woodstock* v. *Kent*, 15 N. H. 579 ; *Rice* v. *Raitt*, 17 N. H. 116 ; *Doe* v. *Burnham*, 31 N. H. 433. Cogswell having pledged and delivered the bonds as collateral security for his own note, the defendants hold them precisely as Cogswell held them,—and that is, as the bonds of the plaintiff, purchased and paid for by her, and subject to her control. To hold otherwise would be, as seems to us, to offer a direct bounty to embezzlement and theft.

*S. C. Eastman*, for the defendants.

The general principle of law is, that a " *bona fide* holder of negotiable paper for value, without notice, is entitled to recover upon any negotiable instrument which he has received before it has become due, notwithstanding any defect or infirmity in the title of the person from whom he derived it, as, for example, even though such person may have acquired it by fraud, or even by theft or robbery." Story on Prom. Notes, *s.* 191. This is a rule of universal acceptation, and is the foundation of all dealings in mercantile paper. A state bond is nothing but a promissory note, with separate promises to pay the interest as it falls due. If payable to order, it is transferable by endorsement, equally with commercial paper. It has been decided that coupon bonds are subject to this principle of commercial law. *Hotchkiss* v. *National Banks*, 21 Wall. 354 ; *Murray* v. *Lardner*, 2 Wall. 110. This rule is applied to paper held as collateral security, even where the debt secured existed prior to the transfer. *Hotchkiss* v. *National Banks, supra; Blanchard* v. *Stevens*, 3 Cush. 162 ; *Swift* v. *Tyson*, 16 Pet. 1, and cases there cited ; *Culver* v. *Benedict*, 13 Gray 7. The cases in New Hampshire in which this general rule has been limited or qualified, are all cases where an endorsee has brought suit against the maker of a note. It is here held, that if the endorsee holds the note as collateral security for the endorser, he holds it as his trustee, which permits the maker to show failure of consideration, or set-off, or any other equitable defence he may have, as if the suit had been brought in the name of the person to whom the note is payable. This rule, which is peculiar to our jurisprudence, ought not to be extended beyond its terms, if, indeed, it is to be sustained at all. In this case, the state of New Hampshire is the maker of the note. The N. H. Savings Bank holds that note as collateral security for the note of Cogswell. If the bank had brought suit against the state, and

the state had set up the defence that Cogswell had stolen the bonds, the decisions might be applicable. The state, however, interposes no such defence. It is, on the contrary, the suit of a person, who, so far as appears on the bond itself, is an utter stranger to the transactions. If the bank had taken the bonds to the state treasurer, and in the spirit of these decisions asked if the state had any defence to them, the answer would have been a negative. No such objection is even now raised. The coupons are paid by the state without inquiry as to the holder. Can the bank be bound by the claims of any other persons, whose rights they could have learned only by accident? Even this New Hampshire rule has been modified and limited. *Clement* v. *Leverett*, 12 N. H. 319.

ALLEN, J.    State bonds, and bonds of municipal and other corporations, are negotiable securities, and pass by indorsement, or delivery, like negotiable promissory notes or bank notes, unless by special provisions on their face, or by legislative acts authorizing their issue, such transfer is restricted or prohibited. *Mercer Co.* v. *Hacket*, 1 Wall. 83; *Murray* v. *Lardner*, 2 Wall. 110. The bonds in question are of this character, and there is nothing on their face, so far as the case shows, nor in the law (*c.* 3, Laws of 1871) authorizing their issue, restricting in any way their negotiability.

The holder of a bill, note, or bond, payable to bearer, like the bonds in this case, or of a negotiable note endorsed in blank, who obtained it before due, for value, in the usual course of business, in good faith, and without notice of any defence or defect in the title, has a good title. This elementary principle of commercial law prevails in every jurisdiction where commercial business is transacted, and is founded in the policy of sustaining the credit and circulation of negotiable paper. Freedom and safety in the negotiation of such paper are a practical necessity, and require that the innocent holder for value be protected against a defective title; and no difference must be made whether he received it from one who obtained it honestly, or by fraud, finding, or theft. Questions of the meaning and application of the rule are made; but the rule itself is universal and unquestioned, and to it there is no more exception in New Hampshire than anywhere else. *Miller* v. *Race*, 1 Burr. 452; *Peacock* v. *Rhodes*, 2 Doug. 633; *Murray* v. *Lardner*, 2 Wall. 110; *Emerson* v. *Crocker*, 5 N. H. 159; *Clark* v. *Pease*, 41 N. H. 421, 424. The rule, that where one of two innocent persons must suffer, the loss should fall upon him who has suffered a negotiable security, with his name attached to it, to get into circulation, and thereby mislead the indorsee, has always been applied with special force to cases of this kind.

The peculiar doctrine, as expressed in *Jenness* v. *Bean*, 10 N. H. 266, and *Williams* v. *Little*, 11 N. H. 66, and on which the plaintiff in this case relies, that negotiable paper, pledged to the holder as collateral security, is not, in the hands of an innocent pledgee, exonerated from defences or defective title, is not recognized outside of

New Hampshire, and within this state has been so limited as not to include cases like the one under consideration. In *Clement* v. *Leverett*, 12 N. H. 317, an agent of the defendants, intrusted by them with bills drawn by him payable to his own order, and by them accepted to enable him to raise money for them, pledged the bills to a *bona fide* holder to secure money borrowed for his own use. It was held, that the defendants, having enabled their agent to hold himself out as owner, were bound by the pledge, and liable to the pledgee. PARKER, C. J., delivering the opinion, says, of *Jenness* v. *Bean* and *Williams* v. *Little*, that the court advanced the doctrine of those cases because the general ownership or property of the bill or note pledged as collateral security remained in the indorser. "But," he remarks, "there is another principle, of earlier application, and of paramount influence in this case [*Clement* v. *Leverett*]. The defendants intrusted Burley (their agent) with these bills, accepted by them, and thereby enabled him to hold himself out as the owner of them. * * Assuming that Burley abused the confidence reposed in him, the defendants who intrusted him with these negotiable evidences of debts against themselves must bear the loss. * * * The plaintiff is a *bona fide* holder without notice."

Numerous authorities are cited by Judge PARKER, which abundantly sustain the doctrine of *Clement* v. *Leverett*. *Collins* v. *Martin*, 1 B. & P. 648, is where the plaintiff had deposited two bills of exchange, endorsed in blank (and so in all legal respects like the plaintiff's two bonds in this case), with his banker, for collection when due. The banker pledged them to the defendant to secure a loan of money to himself. The plaintiff brought trover against the pledgee, and was nonsuited. The plaintiff set up the distinction, which is set up in this case, between a pledge and a sale. But it was held, that the breach of confidence in the agent would be as great in a pledge as in a sale; that in either case the loss would fall on the plaintiff, who, by putting such negotiable paper into the hands of his banker for collection, enabled him to pledge them to an innocent holder; and that, as between the two innocent parties, the plaintiff must suffer. Upon that principle, it would be immaterial whether the paper was committed to the agent for collection, or for safe-keeping. For, between keeping and collecting there is no distinction that can make the plaintiff the loser in the latter case, and the pledgee the loser in the former. Judge PARKER, citing this case as an authority for the decision in *Clement* v. *Leverett*, shows that the infirmity of collateral security, which he introduced in *Jenness* v. *Bean* and *Williams* v. *Little*, does not affect the title of an innocent pledgee, loaning money upon negotiable paper received from an agent, entrusted by the maker or owner with the possession of it for one purpose, and thus enabled to use it for another purpose, leaving one of two innocent persons to suffer a loss. *Washington Bank* v. *Lewis*, 22 Pick. 24, Story on Agency, *ss.* 227, 228, *Bank* v. *Kortright*, 22 Wend. 348, 358, 361, *Bank* v. *Plimpton*, 17 Pick. 159, are all cited by Judge PARKER in *Clement* v. *Leverett*, in point and in the same line with *Collins* v. *Martin*.

No authorities have been found which hold to a contrary doctrine. The question has been raised, whether a person receiving paper as collateral security for a debt previously existing, and advancing for it at the time no consideration either in the way of a loan of money or extension of forbearance, is a holder for value, within the meaning of that phrase as used in commercial law. The affirmative is held in *Homes* v. *Smyth*, 16 Me. 177, 180 ; *Bramhall* v. *Beckett*, 31 Me. 205 ; *Nutter* v. *Stover*, 48 Me. 163, 169 ; *Bay* v. *Coddington*, 5 Johns. Ch. 54 ; *Stalker* v. *M'Donald*, 6 Hill 93. But where the owner of negotiable paper has, for a certain purpose, entrusted it to the care and possession of an agent selected by himself, and that agent, in breach of his trust, has transferred the paper as collateral security for a loan made to him upon the faith of that security, and the innocent owner or the innocent pledgee must suffer a loss from such breach of trust in the owner's agent, the loss falls on the principal whose agent caused the loss. And it is not believed that any contrary doctrine has ever anywhere been judicially expressed.

Whether a deposit for safe-keeping comes within the general rule of agency, which holds a principal bound by an act which he has enabled his agent to perform, we need not here inquire. It is enough that the anomalous infirmity of collateral security, asserted in the New Hampshire cases, has never been held to extend to such a case as this. That infirmity, applied in this case, would affect nothing but the right of the defendants to collect these bonds when due of the state that issued them. It would merely enable the state to set up against the defendants any defence which it might have had against the plaintiff, if she had not lost them, and had called on the state to pay them. It is a New Hampshire idiosyncrasy, rejected by the rest of the world, and will not be followed beyond the limit fixed by the cases asserting it. *Swift* v. *Tyson*, 16 Pet. 1 ; *Goodman* v. *Simonds*, 20 How. 343 ; *Murray* v. *Lardner*, 2 Wall. 110 ; *Hotchkiss* v. *Nat. Banks*, 21 Wall. 354 ; 3 Kent Com. 81, n. 1 (12th ed.) ; Redfield & Bigelow Leading Cases on Bills and Notes 195 ; *Wheeler* v. *Guild*, 20 Pick. 545 ; *Gardner* v. *Gager*, 1 Allen 502 ; *Atkinson* v. *Brooks*, 26 Vt. 569 ; *Trs. of Iowa College* v. *Hill*, 1 Am. L. Reg., N. S., 745 ; 1 Parsons Notes and Bills 219, 228.

*Judgment for the defendants.*

Foster and Stanley, JJ., did not sit.